We must respectfully dissent from the majority opinion which holds that the trial court erroneously granted summary judgment for the defendant because the plaintiff's affidavit of Homer Thornhill, Jr., in opposition to motion for summary judgment, furnished sufficient evidence from which a jury may draw an inference in support of the plaintiff's theory of liability.
Although we recognize that the movant for summary judgment in a negligence action has a heavy burden, we believe the defendant sustained its burden here.
As to paragraphs 1 and 2 of the complaint, it is admitted that R.L. Reid, Inc. was consulted and did prepare plans and specifications to speed up the belt at the State Docks.
Paragraph 3 states that "alterations were subsequently made in accordance with such specifications." (Both sides agree, however, that the alterations were not made as specified;
therefore, there was no triable issue in paragraph 3.)
Paragraph 4 states that the plans (which were not followed) "should have required that the conveyor be equipped with features *Page 308 
to prevent slippage of the conveyor belt . . ."
Paragraph 6 predicates liability on the theory that the conveyor belt was slipping, that the deceased was "putting rosin in between the drive pully or drum and the conveyor belt in order to prevent slippage . . ." when he was pulled into the machinery.
It is undisputed that the deceased used a fixed platform, neither designed nor recommended by Reid, in order to get to the place where he could put the rosin between the pulley and the belt.
Paragraph 7 states that the death of plaintiff's intestate was the "proximate result of the negligence of the Defendants in negligently failing to place a safety guard or shield over the moving portions of the conveyor system" to protect employees.
The plaintiff's theory of liability is that Reid was negligent in failing to specify a guard to shield the nip point of the head pulley in plans and specifications for modifying the bulk loading facility at the State Docks. Mr. Thornhill stated that the engineer, Reid, should have recognized the extremely dangerous nip hazard and should have, in the course of modernization of the equipment, brought it up to safety standards applicable in 1964. He further stated that there were very basic simple guards available and in use during 1964 that would have virtually eliminated the hazard complained of in this lawsuit.
In short, plaintiff says that Reid was obligated to design a guard rail, that if it had been designed, the State Docks would probably have installed it, and had it been installed, the deceased would not have suffered his injury and death; however, it is undisputed that the Docks did not follow Reid's plan, and Reid's affidavit states that had its plans been followed, there would have been no slippage. If there would have been "no slippage," even plaintiff's complaint shows there would have been no injury.
Mr. Thornhill's statement may be sufficient to get past the point of summary judgment and make it an issue of fact as to whether or not Reid failed to meet the standards of the profession existing at the time it performed the services with respect to the need for including a guard to shield the nip point of the head pulley in its plans and specifications. This would meet one of the problems alluded to in Justice Shores' opinion in the second case, Reid v. Plant, 350 So.2d 1022 (Ala. 1977), namely, that the plaintiff's evidence on the last appeal was deficient in that it did not include an expert's opinion that the state of the art in 1964 required that guards be specified by engineers whether engaged to include safety features in plans and specifications or otherwise.
Reid's affidavit and the drawings attached [which we append hereto], without dispute, show not only that Reid's plans and specifications were not followed but that the machinery at the time of the accident was in the same arrangement as it was when Reid was asked to draw plans to speed up the belt; that the condition as it existed at the time of Mr. Plant's accident, regarding belt speed, chain guard and chain drive, was the same as existed in 1964.
In essence, the theory of liability of Reid is: Reid, when called upon to design a system to speed up the conveyor belt, should have recommended a guard, which the Docks may or may not
have installed.
Thornhill states:
 "Even though the original system might have been reinstalled at the time of the accident, this would not have affected the guard that would have been in place had the engineer specified it."
With all due respect, the emphasized portion of this statement overlooks the fact that our former opinion also concluded that had the plans and specifications recommended by Reid been adopted by the State Docks, "the nip point of the head pulley would not have been accessible to humans and, therefore, a guard would not have *Page 309 
been required to meet the standards of the profession as they existed in 1964."
Can an engineer be held liable for injuries which could not have occurred had his modifications been adopted? The answer is emphatically not! Bayne v. Everham, 197 Mich. 181,163 N.W. 1002 (1917).
This Court held on the former appeal, at page 1027:
 "The plaintiff apparently concedes that Reid would not be liable had its plans and specifications contained a recommendation that the nip point be guarded and the State Docks had failed to follow the recommendation. We can see no difference where it is conceded that Reid recommended that the belt feeder be moved some 1'8" so as to make it inaccessible to workmen, and this recommendation was not followed by the State Docks. [i.e. no proximate cause.]"
The point of all of this is simply that in order to avoid an adverse summary judgment, it seems to us that the plaintiff should have not only submitted evidence to establish the standard of care imposed upon engineers in 1964, but also presented evidence that the specifications and recommendations of the defendant Reid had been complied with and been followed prior to the accident.
If Reid's affidavits be taken to be true, as they must, and if the State had followed its recommendations, the nip point of the head pulley would have been so located that no person would have had access thereto and, therefore, there would have been no necessity to have a guard installed at that point to shield it. Additionally, Reid's statement that there would have been no belt slippage if his plans had been followed is uncontradicted. Thus, it seems to us, that the defendant met its burden and the summary judgment ought to be affirmed.
Here, we have an engineer who was hired to prepare plans and specifications which admittedly the State failed to follow and which admittedly had it followed, there would have been no need for the plaintiff to put rosin between the belt and the drum, and the point at which the plaintiff's decedent was caught into the machine and was killed would have been inaccessible to the plaintiff's decedent and, therefore, his death would not have occurred.
The majority holds that an engineering firm may be held liable for an accident that would not have happened had its plans and specifications been followed. How can Reid's negligence be the proximate cause of the plaintiff's decedent's death?
It is clear from the authorities that in order for an engineer to be liable for alleged negligent design it must first be shown that the work claimed to be defective was constructed in accordance with the plans and specifications he prepared. Wheat Street Two, Inc. v. James C. Wise, Simpson,Aiken Associates, Inc., 132 Ga. App. 548, 208 S.E.2d 359
(1974); McGuire v. United Brotherhood of Carpenters, 50 Wn.2d 699, 314 P.2d 439 (1957); Dresco Mechanical Contractors, Inc.v. Todd-Cea, Inc. v. J.W. Austin, Jr. and Associates, Inc.,531 F.2d 1292 (5th Cir. 1976).
Even though we are reluctant to approve the grant of summary judgment in a negligence case, we are compelled to state that it was appropriate in this particular case.
 [See following illustration.] *Page 310